# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| CARLY BECK, on behalf of herself and all others similarly situated, | : : : : | Case No. 3:16-cv-455 |
| | | Judge Thomas M. Rose |
| Plaintiff, | : : | |
| v. | : : | |
| STONY HOLLOW LANDFILL, INC., | : : | |
| Defendant. | : | |

---

### ENTRY AND ORDER DENYING DEFENDANT STONY HOLLOW LANDFILL, INC.'S MOTION TO DISMISS (DOC. 12) THE COMPLAINT AND MOTION TO STRIKE CLASS ALLEGATIONS (DOC. 14)

---

This case is before the Court on the Motion to Dismiss (Doc. 12) the Complaint and Motion to Strike (Doc. 14) the Complaint's class allegations filed by Defendant Stony Hollow Landfill, Inc. ("Stony Hollow"). Plaintiff Carly Beck ("Beck") lives within three miles of a municipal solid waste landfill operated by Stony Hollow. (Doc. 1 at ¶ 2-4, 26.) Beck alleges that Stony Hollow has negligently managed the landfill's gas emissions and, as a result, her use and enjoyment of her home has suffered. Beck seeks to represent a class of all property owners within a three-mile radius of Stony Hollow's landfill, but she has not yet moved to certify a class. Stony Hollow moves to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. In the event that the Complaint survives the Motion to Dismiss, Stony Hollow also moves to strike the Complaint's class allegations on the grounds that Beck cannot meet the requirements for certifying a class under Fed. R. Civ. P. 23(a) and (b).

For the reasons below, the Court **DENIES** both the Motion to Dismiss and Motion to Strike.

**I. BACKGROUND**[1]

Beck is a resident of Moraine, Ohio. (Doc. 1 at ¶ 2.) Stony Hollow is a Delaware corporation with its principal place of business in Houston, Texas. (*Id.* at ¶ 3.) The Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), and pursuant to the Court' s diversity jurisdiction under 28 U.S.C. § 1332(a).

Stony Hollow owns and controls a municipal solid waste landfill located on South Gettysburg Road in Dayton, Ohio, within three miles of Beck's residence. (*Id.* at ¶ 4, 26.) Beck's property "has been and continues to be physically invaded by noxious odors" coming from Stony Hollow's landfill. (*Id.* at ¶ 9-10.) Beck alleges that a "properly operated, maintained, and managed landfill will collect, capture and destroy landfill gas from the landfill in order to prevent it from escaping into the ambient air as fugitive emissions." (*Id.* at ¶ 13.) According to Beck, Stony Hollow's landfill is not properly operated, maintained, and managed because it "has failed to sufficiently collect, capture, and destroy landfill gas generated at its landfill to prevent fugitive emissions and to otherwise prevent odors from the landfill from invading" Beck's property. (*Id.* at ¶ 14.) Beck also alleges that Stony Hollow "failed to properly construct, repair, maintain and/or operate its landfill." (*Id.* at ¶ 25.)

Stony Hollow's landfill has been the subject of numerous complaints from nearby residents to state and local authorities and over 160 households have contacted her counsel in this case documenting the landfill's odors. (*Id.* at ¶ 15-17.) The Regional Air Pollution Control Agency ("RAPCA") has cited Stony Hollow, on at least one occasion, for causing an odor nuisance to its neighbors. (*Id.* at ¶ 18.) In 2016, RAPCA performed a 14-day surveillance of the landfill and, on 12 of the 14 days, observed moderate to very strong landfill odors offsite. (*Id.* at ¶

---
[1] The following facts are taken from the Complaint, whose allegations the Court accepts as true when considering Stony Hollow's Motion to Dismiss.

19.)

Beck claims that the noxious odors from Stony Hollow's landfill interfere with the use and enjoyment of her property and has reduced her property's value. She seeks to represent a class of all owners, occupants and renters of residential property residing within three miles of the landfill's property boundary. (Doc. 1 at ¶ 26.) Beck claims that Stony Hollow's landfill has caused damages in excess of $5,000,000. Beck asserts two causes of action against Stony Hollow for (1) nuisance and (2) negligence and gross negligence.

## II.     STONY HOLLOW'S MOTION TO DISMISS

### A. Legal Standard under Fed. R. Civ. P. 12(b)(6)

When considering a motion to dismiss under Rule 12(b)(6), courts must construe the complaint in the light most favorable to the plaintiff and accept as true all "well-pleaded allegations" in the complaint. *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 246 (6th Cir. 2012). The court need not accept, however, "a legal conclusion couched as a factual allegation." *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (internal quotation marks omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alterations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

### B. Beck's Nuisance Claim

Stony Hollow argues that Beck's nuisance claim should be dismissed because she fails to allege: (1) the elements of a private nuisance; (2) the elements of a public nuisance; (3) the time

range during which the nuisance existed and her damages were incurred; (4) that the landfill's odors have "substantially and unreasonably interfered with her use and enjoyment of her property"; and (5) "why all owners, occupants, and renters who live within three miles of the landfill's property boundary are entitled to relief." (Doc. 13 at 2.)

Ohio law defines a nuisance as the wrongful invasion of a legal right or interest. *Taylor v. Cincinnati*, 143 Ohio St. 426, 432 (1944). "Wrongful invasion" includes both the use and enjoyment of property or of personal rights and privileges. *Id*. There are different types of nuisance claims under Ohio law: public or private, continuing or permanent, and qualified or absolute. *Kramer v. Angel's Path, L.L.C.*, 2007-Ohio-7099, ¶¶ 15-23 (Ohio Ct. App. 6th Dist. 2007).

A public nuisance is "an unreasonable interference with a right common to the general public." *Kramer*, 2007-Ohio-7099, ¶ 15 (quoting *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d at 712). To prove a claim for public nuisance, a plaintiff must show both interference with a public right and that she suffered an injury distinct from that suffered by the public at large. *Kramer*, 2007-Ohio-7099, ¶ 16. "[T]he harm suffered by the plaintiff must be different in kind, rather than different in degree, from that suffered by other members of the public exercising the public right." *Id.* A private nuisance is a "nontrespassory invasion of another's interest in the private use and enjoyment of land." *Brown*, 87 Ohio App.3d at 712. To be actionable, a private nuisance must be either "(a) intentional and unreasonable or (b) unintentional but caused by negligent, reckless, or abnormally dangerous conduct." *Kramer*, 2007-Ohio-7099, ¶ 17.

A nuisance may also be continuing or permanent. "A continuing nuisance arises when the wrongdoer's tortious conduct is ongoing, perpetually generating new violations." *Kramer*, 2007-Ohio-7099 at ¶ 18. In contrast, a permanent nuisance "occurs when the wrongdoer's

tortious act has been completed, but the plaintiff continues to experience injury in the absence of any further activity by the defendant." *Id.*

A qualified nuisance and an absolute nuisance also must be distinguished. "An absolute nuisance, or nuisance per se, is based on intentional conduct or an abnormally dangerous condition that cannot be maintained without injury to property, no matter what precautions are taken." *Kramer*, 2007-Ohio-7099 at ¶ 19 (citing, inter alia, *State ex rel. R.T.G., Inc. v. State*, 98 Ohio St.3d 1, 2002 Ohio-6716, 780 N.E.2d 988, ¶ 59). A party found guilty of committing an absolute nuisance will be held strictly liable for its resulting damages. *Id.* In contrast, a qualified nuisance "is defined as essentially a tort of negligent maintenance of a condition that creates an unreasonable risk of harm." *Id*. at ¶ 21. A qualified nuisance therefore arises from a failure to exercise due care. *Id.*

Beck does not specify the type of nuisance claim that she wishes to pursue. Stony Hollow claims that, due to this lack of specificity, the Complaint fails to provide fair notice of Beck's claims. To the contrary, as demonstrated by the memorandum in support of its motion to dismiss, Stony Hollow is on notice of the claims against it. Construing the Complaint in the light most favorable to Beck, it is reasonable to conclude that she asserts claims for both a public and private nuisance. Her allegations also are consistent with the assertion of a continuing and qualified nuisance. Beck alleges that Stony Hollow could operate its landfill in a manner that would not create a nuisance, but that it has failed to exercise the due care required to do so.

Beck is not required, at this time, to choose the theory upon which she will seek relief. She may assert a claim for both a private and public nuisance based on the same facts alleged in the Complaint. *Brown v. Cty. Comm'Rs*, 622 N.E.2d 1153, 1160 (Ohio Ct. App. 4th Dist. 1993).

5

### 1. Public Nuisance

Beck alleges facts supporting a claim for public nuisance. She alleges that the landfill emits noxious, offensive odors that interfere with the use and enjoyment of her property and reduce her property's value. Assuming those facts to be true, Stony Hollow would be in violation of a public right established under Ohio law. *See Hager v. Waste Techs. Indus.*, 2002-Ohio-3466, ¶ 81 (Ohio Ct. App. June 27, 2002). As noted in *Hager*, Ohio Administrative Code 3745-15-07 provides:

> The emission or escape into the open air from any source or sources whatsoever, of smoke, ashes, dust, dirt, grime, acids, fumes, gases, vapors, or any other substances or combinations of substances, in such manner or in such amounts as to endanger the health, safety or welfare of the public, or cause unreasonable injury or damage to property, is hereby found and declared to be a public nuisance. It shall be unlawful for any person to cause, permit or maintain any such public nuisance.

Ohio Admin. Code 3745-15-07(A). In *Hager*, the Ohio Court of Appeals stated that this statute amounts to "a legislative declaration" that the conduct described—the same conduct complained of in Beck's Complaint here—is "an unreasonable interference with a public right." *Hager*, 2002-Ohio-3466 at ¶ 81.

Beck also alleges an injury distinct from that suffered by the public at large. The general public includes anyone who must suffer the consequences of being in the presence of the alleged odors—people who live in the area like Beck, but also people who work in the area or travel through the area. Beck's alleged injury as a property owner is distinct from the alleged injury suffered by the general public. Ohio courts have recognized that property owners are uniquely situated to pursue a nuisance claim: "When the particular harm involved consists of interference with the use and enjoyment of land, the landowner may recover either on the basis of the particular harm to her resulting from the public nuisance or on the basis of private nuisance." *Brown*, 622 N.E.2d at 1160.

6

## 2. Private Nuisance

Beck also alleges facts supporting a claim for private nuisance. A private nuisance claim is essentially a claim for negligence, the basic elements of which are duty, breach, and damages resulting from the breach. *Mussivand v. David*, 45 Ohio St. 3d 314, 318, 544 N.E.2d 265, 270 (1989); *see also* 70 Ohio Jur. 3d Negligence § 3. As noted above, Stony Hollow has a duty not to permit fumes to escape into the open air that endanger the health, safety or welfare of the public. Stony Hollow also has a common-law duty of due care under Ohio law, which requires "that degree of care which an ordinarily reasonable and prudent person exercises, or is accustomed to exercising, under the same or similar circumstances." *Mussivand*, 45 Ohio St. 3d at 318. Beck alleges that Stony Hollow breached these duties to her, as evidenced by the landfill's emission of the noxious and offensive odors that fall onto her property.

Stony Hollow contends that Beck has alleged only the legal elements of a negligence claim, and no actual facts to support such a claim. Stony Hollow specifically points to Beck's allegation that Stony Hollow "negligently and improperly constructed, maintained and/or operated its landfill, allowing excessively fugitive emissions to escape." (Doc. 13 at 8 (quoting Doc. 1 at ¶ 46).) Beck admits that, at this stage of the litigation, she cannot allege additional information such as "the collection capacity and efficiency of the landfill gas system, or the precise quantities of landfill gas collected and emitted." (Doc. 20 at 11.) Beck need not allege "detailed factual allegations" to survive a motion to dismiss, however, so long as the factual allegations are "enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (2007). Beck has met this standard. If the gases emanating from the landfill are as odorous and offensive as Beck alleges, then it is plausible—not merely speculative—that Stony Hollow has failed to manage the

7

landfill in satisfaction of its duty under Ohio law.

Stony Hollow also argues that Beck fails to allege any "physical discomfort" that amounts to actionable damages. (Doc. 13 at 12-14 (citing *Ford et al. v. Chillicothe Paper, Inc. et al.*, No. 2:15-cv-2464 (S.D. Ohio Jan. 15, 2016) (attached as Doc. 13-1); *Antonik v. Chamberlain*, 81 Ohio App. 465, 476 (Ohio Ct. App. 9th Dist. 1947); *Banford v. Aldrich Chem. Co.*, 126 Ohio St. 3d 210, 213 (2010); *Baker v. Chevron U.S.A. Inc.*, 533 F. App'x 509, 524 (6th Cir. 2013)). To recover on a nuisance claim, a plaintiff must allege an injury that is "real, material, and substantial." *Banford*, 126 Ohio St. 3d at 213. The Supreme Court of Ohio has held that conditions that "affect one's sight, sound, smell, hearing, or touch" may cause a "physical discomfort" for which damages are available. *Banford*, 932 N.E.2d at 318. "In cases in which courts have determined that circumstances did not rise to the level of nuisance and refused to award damages for annoyance and discomfort, the offending situation had no effect on the senses and thus no physical component of annoyance and discomfort." *Id.* at 319.

Here, Beck's alleged damages are real, material, and substantial. She alleges that the landfill's odors are so offensive that they have woken her up in the middle of the night, forced her to stay inside her home with the windows closed, and discouraged her from inviting guests to her home out of embarrassment. (Doc. 1 at ¶ 43.) These allegations describe a powerful, negative effect on Beck's physical sense of smell. That is all that is required under Ohio law.

### C. <u>Beck's Negligence and Gross Negligence Claim</u>

Stony Hollow argues that Beck's negligence claims should be dismissed for essentially the same reasons that it argued for dismissal of her private nuisance claim. As a private nuisance claim and a negligence claim share essentially the same elements, this argument also fails. Stony Hollow again contends that Beck has not alleged "physical" damage sufficient to state a claim.

8

As discussed above, Beck alleges physical discomfort for which she can recover. Ohio law also permits a homeowner to recover for interference with the use of her property, which Beck also alleges. *See Baker*, 533 F. App'x at 524.

Stony Hollow argues that Beck's gross negligence claim should be dismissed because she does not allege that Stony Hollow engaged in "willful and wanton" misconduct. (Doc. 13 at 17.) Under Ohio law, gross negligence is the "failure to exercise any or very slight care" or the "failure to exercise even that care which a careless person would use." *Winkle v. Zettler Funeral Homes, Inc.*, 182 Ohio App. 3d 195, 209 (Ohio Ct. App. 12th Dist. 2009). Beck alleges that there have been numerous complaints about the odors emitted from Stony Hollow's landfill to state and local authorities and that Stony Hollow has acknowledged that its landfill emitted objectionable odors. Yet, Stony Hollow's landfill continues to emit objectionable odors. Ultimately, whether or not Stony Hollow's conduct rises to the level of gross negligence is a jury question. At this stage, however, Beck plausibly alleges that Stony Hollow has engaged in gross negligence.

### III. STONY HOLLOW'S MOTION TO STRIKE CLASS ALLEGATIONS

#### A. Legal Standard under Fed. R. Civ. P. 23

Federal Rule of Civil Procedure 23 states that, in an action brought on behalf of a putative class of similarly situated individuals, the court should decide at "an early practicable time" whether or not a class action should be certified. Fed. R. Civ. P. 23(c)(1)(A). Typically, the plaintiff, who bears the burden of proof, moves the Court to certify a class under Rule 23. Nonetheless, a defendant may move to strike class allegations in a complaint where they are so deficient that discovery is not required to consider their merits. *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011); *see also Colley v. Procter & Gamble Co.*, No. 1:16-CV-918, 2016 WL 5791658, at *2 (S.D. Ohio Oct. 4, 2016). Courts should exercise caution

when evaluating class action allegations based solely on the pleadings, however, "because class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Geary v. Green Tree Servicing, LLC*, No. 2:14cv522, 2015 WL 1286347 (S.D. Ohio Mar. 20, 2015). Therefore, "a district court should defer decision on class certification issues and allow discovery 'if the existing record is inadequate for resolving the relevant issues.'" *Bearden v. Honeywell Int'l, Inc.*, 720 F. Supp. 2d 932, 942 (M.D. Tenn. 2010) (quoting *In re Am. Med. Sys.*, 75 F.3d 1069, 1086 (6th Cir.1996)).

To obtain class certification, a plaintiff must show that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These four requirements "serve to limit class claims to those that are fairly encompassed within the claims of the named plaintiffs because class representatives must share the same interests and injury as the class members." *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 850–51 (6th Cir. 2013) (citing *Dukes,* 131 S.Ct. at 2550).

In addition to satisfying Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequate representation, the proposed class must also meet at least one of the three requirements listed in Rule 23(b). *Id.* (citing *Dukes,* 131 S.Ct. at 2548; *Young,* 693 F.3d at 537). Here, Beck seeks class certification under Rule 23(b)(1) and (3). (Doc. 1 at ¶ 35-36.) Rule 23(b)(1) requires that the prosecution of separate actions by individual class members would create a risk of "inconsistent or varying adjudications" or adjudications "that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed.

R. Civ. P. 23(b)(1)(A)-(B). Rule 23(b)(3) requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members" and that the class action is "superior to other available methods" to adjudicate the controversy fairly and efficiently. Fed. R. Civ. P. 23(b)(3).

B. <u>**Analysis**</u>

Stony Hollow argues that Beck's class allegations are deficient on their face for several reasons. First, Stony Hollow argues that individual issues abound in mass tort cases, like this one, in which damages to real property are at issue. Second, Stony Hollow argues that Beck's proposed class definition is impermissibly vague—principally because she has not alleged the time period during which the alleged nuisance occurred. Third, Stony Hollow argues that Beck cannot meet Rule 23(a)'s commonality requirement because there is no single issue capable of resolution on a class-wide basis. Fourth, Stony Hollow argues that Beck cannot show that common issues predominate over individual issues, as required to certify a class under Rule 23(b)(3). Fifth, Stony Hollow argues that Beck cannot show that a class action is a superior method of adjudication. Sixth, and lastly, Stony Hollow argues that class certification under Rule 23(b)(1) would not be proper because Beck has not shown that there is any risk of inconsistent judgments.

In response, Beck asserts that courts routinely certify class actions in mass tort cases involving air pollution. (Doc. 19 at 6-7 (citing, *inter alia*, *Stanley v. U.S. Steel Co.*, No. 04-74654, 2006 U.S. Dist. LEXIS 16582, 21 (E.D. Mich. Mar. 17, 2006); *Batties et al v. Waste Management of Pennsylvania, Inc.*, No. 14-7013 (E.D. Pa. May 11, 2016); *Ponca Tribe of Indians v. Cont'l Carbon Co.*, No. CIV-05-445-C, 2007 U.S. Dist. LEXIS 577, at *25 (W.D. Okla. Jan. 3, 2007)). Beck further argues that her class definition is unambiguous and appropriate because it is "clearly

11

defined by reference to nothing but objective criteria." (Doc. 19 at 9.) Beck's main argument, however, is that it would be premature to rule on whether or not class certification is appropriate until she has been able to conduct discovery.

After reviewing the caselaw, Beck's last argument is the most convincing. Stony Hollow's objections to class certification have legal support, but it would be premature to rule upon the viability of the proposed class without further factual development. One of the cases cited by Stony Hollow, and then noted in Beck's response, is *Powell v. Tosh*, No. 5:09-cv-121, 2013 WL 4418531 (W.D. Ky. Aug 2, 2013). In that case, the plaintiffs asserted nuisance and negligence claims—among others—relating to odors emitted from the defendants' hog farms. The court initially certified a Rule 23 class that consisted of current and former residents within a 1.25-mile radius of one set of defendants' hog barns. The court later reversed its class certification decision, however, after discovery revealed significant individual differences among the class members' claims. *Id.* at *5-8. In particular, the court cited the deposition testimony of several unnamed class members that undercut the lead plaintiffs' allegations regarding the severity of the hog farms' odors. The difference of opinion among class members was material because Kentucky law defined a nuisance by both subjective and objective criteria. The court therefore found that "a necessary component of the Plaintiff class's nuisance claim" could not be answered on a classwide basis. *Id.* at *6-7. In addition, the objective criteria required to prove a nuisance could not be adjudicated on a classwide basis because they too were subject to individualized proof as to each class member's property. *Id.* at *7-8. As a result, Rule 23(a)'s commonality requirement was not met and class certification was no longer proper.

Here, the case is still at the pleading stage. It may be that individualized issues ultimately preclude the certification of Beck's proposed class. The Court disagrees with Stony Hollow's

contention, however, that class certification would never be appropriate in this case, regardless of the factual record that develops. Beck may be able to demonstrate that no individual issues exist, that any individual issues do not preclude class certification, or propose an amended class definition that meets Rule 23's requirements. In any event, there simply is not a sufficient factual record before the Court to conduct the rigorous analysis required by Rule 23 at this time. Stony Hollow's Motion to Strike is therefore denied.

## IV. **CONCLUSION**

For the reasons above, the Court **DENIES** the Motion to Dismiss (Doc. 12) and Motion to Strike (Doc. 14).

**DONE** and **ORDERED** in Dayton, Ohio, this Monday, May 1, 2017.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE